| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| FORMAN HOLT<br>365 West Passaic Street, Suite 400<br>Rochelle Park, NJ 07662<br>(201) 845-1000<br>Proposed Attorneys for Debtor<br>Erin J. Kennedy, Esq.<br>Michael E. Holt, Esq.<br>ekennedy@formanlaw.com<br>mholt@formanlaw.com | |
| In Re:<br><br>AMMON ANALYTICAL LABORATORIES, LLC,<br><br>Debtor. | Case No.: 22-14534 (SLM)<br><br>Chapter 11<br><br>Judge: Stacey L. Meisel |

### DECLARATION OF STEPHEN HAUPT IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND FIRST DAY RELIEF

I, Stephen Haupt, pursuant to Section 1746 of Title 28 of the United States Code, hereby declare that the following is true to the best of my knowledge, information and belief:

1. On June 7, 2022 (the "Petition Date"), Ammon Analytical Laboratories, LLC ("Ammon" or "Debtor") commenced a case in the United States Bankruptcy Court for the District of New Jersey (the "Court") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 104, *et seq.* (the "Bankruptcy Code").

2. I am managing member and chief executive officer ("CEO") of the Debtor and served in that capacity from 1998 until I retired in March 2020. I came out of retirement in December 2021 and have served as CEO and since then.

3. I am fully familiar with the Debtor's day to day operations, business and financial affairs, and am duly authorized to make this declaration on the Debtor's behalf.

4. In accordance with the Local Rules and given the nature of this chapter 11 case, the Debtor has requested that the Court schedule a hearing at its earliest convenience to consider the

First Day Motions. The Debtor will continue to operate its business and manage its assets as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. I submit this Declaration to assist the Court and other parties-in-interest in understanding the circumstances that compelled the commencement of this chapter 11 case and in support of the Debtor's voluntary chapter 11 petition and First Day Motions. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management and the Debtor's professional advisors, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the Debtor's operations and financial affairs. If I were called upon to testify, I would testify competently to the facts set forth in this Declaration.

I. **FACTUAL BACKGROUND**

A. **General Overview**

6. The Debtor is a New Jersey limited liability company with its principal assets and main operations located in Linden, New Jersey. The Debtor also has a facility in Webster, Massachusetts.

7. The Debtor was founded in 1998 to provide the highest quality laboratory testing for health care professionals on a nationwide basis.

8. Ammon provides industry leading testing in the field of toxicology and addiction medicine using state of the art equipment and testing processes, as well as other testing services, including clinical blood testing, COVID testing and Telehealth testing.

9. Stephen Haupt holds a 60% ownership interest in Ammon. Even Haupt, his son, owns 10%. Evan Haupt serves as Ammon's President. The ownership interests are listed on Exhibit A.

10. The Debtor maintains its primary location and corporate offices at 35 East Blancke Street, Linden, New Jersey.

11. The Debtor employs approximately 21 salaried employees and 62 hourly employees.

B. **Factors That Precipitated The Debtor's Chapter 11 Filing**

1. **Department of Justice Investigation**

12. In 2018, the United States Department of Justice ("DOJ") opened an investigation as to whether or not the Ammon had engaged in improper Medicare billings and services. Ammon's billings to Medicare have been proper and Ammon has provided all requested information to the Department of Justice to demonstrate this. No action has been brought by the DOJ and there are no outstanding requests for information at this time.

13. As part of the DOJ investigation, the DOJ issued subpoenas to at lease five of Ammon's major clients, causing four of those clients to discontinue using Ammon's services. These lost accounts comprised at least 50% of Ammon's business at the time and resulted in lost revenue in excess of $500,000 per month.

14. The DOJ investigation cause Ammon to incur substantial legal fees during the investigation. These additional expenses contributed to the Debtor's distressed financial circumstances.

2. **New Jersey Medicaid Policy Change**

15. Part of Ammon's business had been performing quantitative drug testing which was paid for by New Jersey Medicaid. These tests were one of Ammon's biggest sources of revenue and Ammon had acquired equipment that cost several million dollars to perform these tests.

16. In the beginning of March 2021, New Jersey Medicaid gave Ammon notice that it was modifying approval of specimen testing which discontinued approval for certain tests Ammon

had been performing for its clients, including the quantitative drug testing and limited the frequency of the approved tests.

17. The change in the New Jersey Medicaid approved testing reduced the per specimen approved payments from $175 to $65 per specimen and resulted in lost revenues of approximately $14,000,000 per year

18. The adverse change in approvals by New Jersey Medicaid caused Ammon to lose approximately 30% of its specimen revenue while still paying for the expense of the equipment related to these tests.

### 3. Adverse Impacts of COVID

19. A substantial component of Ammon's work was specimen testing for drugs. The COVID shutdown had an adverse impact of Ammon's revenue because it lowered the count of specimen testing.

20. The COVID shut down reduced Ammon's volume of testing by approximately 60%.

21. Although Ammon performed COVID testing, it initially did not handle the testing in house. Ammon's outsourcing of COVID testing generated no profit for Ammon. Rather the handling of the tests conducted by outside providers resulted in a net loss by Ammon.

### C.    **The Precursor of the Chapter 11 Filing**

22. As a result of the situations described above, Ammon fell behind in its payments to its creditors.

23. Although Ammon tried to work out payment plans to enable it to pay off the arrears to its creditors, it was unable to maintain its current operating expenses and pay off its accumulated debt at the same time.

24. On February 18, 2022, a default judgment was entered in favor of BioReference Laboratories, Inc. ("BioReference") in the amount of $189,407.41.

25. On March 8, 2022, the Superior Court of New Jersey, Law Division, Bergen County issued a writ of execution in connection with the BioReference judgment which was delivered to the Bergen County Sheriff.

26. On May 5, 2022 to May 10, 2022, the Bergen County Sheriff levied on Ammon's Chase Bank checking account and the sum of $84,968.18 has been placed in a suspense account.

27. The funds in the suspense account are vital to the Debtor's current operations and the levy has interfered with Ammon's ability to pay its current obligations.

28. Following the levy on its Chase Bank checking account, Ammon consulted with professionals regarding its legal options and began exploring the availability of insolvency relief.

29. Ammon evaluated its various restructuring options and determined the best way to preserve the value of its assets and business for the benefit of all stakeholders was to commence this chapter 11 case. Through the chapter 11, the Debtor intends to continue operations with funding provided through its accounts receivables under the authority of a cash collateral agreement with Chase Bank, which holds a lien on the Debtor's accounts receivable.

30. The Debtor has asked the Court to consider, on an expedited basis, certain motions. designed to (a) enable the Debtor to operate effectively, ease the Debtor's transition into chapter 11, and mitigate potentially adverse effects of the chapter 11 filing; (b) minimize disruption of the Debtor's ability to continue providing quality service to its customers and, thus, preserve its customers' confidence and ensure their continued patronage; (c) maintain and bolster employee morale so as to reduce employee attrition during the Debtor's chapter 11 proceeding, which would have a detrimental impact on the Debtor's business and customer service; and (d) maintain the going concern value of the Debtor's business and assets while it reorganizes.

31. The Debtor is asking the Court to consider the following:

    (a) Debtor's Motion for an Order (I) Authorizing the Debtor to Continue and Maintain its Existing Bank Accounts and Business Forms, (II) Modifying the Investment Guidelines, (III) Providing the United States Trustee with a 60-Day Objection Period, and (IV) Granting Related Relief; and

    (b) Debtor's Motion for an Order (I) Authorizing the Debtor to (A) Pay Prepetition Wages and Related Obligations, (B) Pay and Remit Payroll Taxes and Other Deductions to Third Parties, and (C) Honor and Process Workers' Compensation and Employee Benefit Obligations, and (II) Authorizing and Directing All Banks to Honor Checks and Transfers for Payment of Prepetition Employee Obligations.

32. Each of these First Day Motions is crucial to the Debtor's restructuring efforts and preservation of the Debtor's assets and estate.

## II. FIRST DAY PLEADINGS

### A. Prepetition Wages

33. In furtherance of its business, the Debtor employs various people in its office and laboratory (the "Employees"). Some of the Employees are salaried while others are hourly wage earners.

34. As of the Petition Date, the Debtor employs approximately 83 Employees, of whom approximately 21 are salaried and 62 are hourly wage earners.

35. The continued, uninterrupted service of the Debtor's Employees is essential to the Debtor's reorganization efforts. Any (i) delay in paying outstanding wages, salaries, and other compensation due to the Employees as of the Petition Date or (ii) failure to continue such practices, programs, and policies with respect to employee benefits could severely disrupt the Debtor's relationship with its Employees, impair morale at this critical juncture, and disrupt the Debtor's business operations.

36. Payroll is processed for the Debtor on a bi-weekly basis through a third-party payroll servicer, Paylocity. To fund these payroll obligations, the Debtor issues wire transfers from its various Chase Bank accounts to Paylocity. The wire transfers for payroll are typically made between Wednesdays and Fridays each week, with salaried and hourly employees receiving payment on alternating weeks.

37. The Debtor's employees receive wages, salaries, allowances, and bonuses. The Debtor's most recent payroll for its salaried employees was processed on June 3, 2022 and paid on June 6, 2022, in which the Debtor paid salaries for the period from May 15, 2022 through May 28, 2022. The Debtor's most recent pay date for its hourly employees was May 27, 2022, on which the Debtor paid it hourly employees for the period from May 8, 2022 through May 21, 2022.

38. As of the Petition Date, the wages, salaries and related obligations were due for the period of May 22, 2022 through the Petition Date for hourly employees and for the period of May 29, 2022 to the Petition Date for the salaried employees (the "Unpaid Prepetition Wages").

39. The Unpaid Prepetition Wages owed to the Debtor's salaried employees (the "Salaried Wages") are approximately $47,143.24. The Unpaid Prepetition Wages owed to the Debtor's hourly employees (the "Hourly Wages") are approximately $86,639.22. These figures are inclusive of all Deductions and Withheld Taxes referenced below.

40. During each applicable payroll period, the Debtor routinely deducts certain amounts from employees' paychecks for items such as pre- and post-tax deductions payable pursuant to certain employee benefit plans, such as health and dental insurance premiums, health savings accounts, 401(k) plan contributions, legally ordered deductions such as garnishment and child support obligations, and other miscellaneous deductions (collectively, the "Deductions").

41. The deductions associated with the Unpaid Prepetition Wages total $4,769.95 for prepetition Salaried Wages and $7,133.13 for the prepetition Hourly Wages.

42. The Debtor also is required by law to withhold from employee paychecks amounts related to federal, state and local income taxes, Social Security, Medicare, and state unemployment/disability taxes (collectively, "Withheld Taxes") and to pay from its own funds Social Security, Medicare and other taxes to federal and state authorities ("Employer Taxes" and, together with the Withheld Taxes, "Payroll Taxes"). The Debtor remits the Payroll Taxes to the appropriate taxing authorities and files periodic tax returns when due.

43. For the Unpaid Prepetition Wages, the Withheld Taxes for the Debtor's salaried employees were $11,921.66, and the Employer Taxes were $4,027.42, for total Payroll Taxes of $15,949.08. As of the Petition Date, the Withheld Taxes for the Debtor's hourly employees were $14,802.08 and the Employer Taxes were $8,879.70 for total Payroll Taxes of $23,681.78.

44. The Debtor also owes Additional Withheld Taxes for payroll prior to May 22, 2022 in the amount of $206,581.12.

45. To provide continuity of income for employees during time off from their jobs for vacation, personal time, holidays, emergencies and illness, the Debtor provides paid time off ("PTO") to its employees. Certain of the Debtor's employees have accrued and unused PTO as of the Petition Date. The Debtor seeks authorization to continue with its prepetition policies and procedures with respect to PTO, in the ordinary course of business.

46. The Debtor provides its employees with various health, welfare and benefits programs including, but not limited to, medical insurance, dental insurance, health savings accounts, and 401(k) plan employer contributions (the "Health and Welfare Benefits"). The Debtor's total monthly cost for providing medical and dental insurance to its employees is $51,274.49. The monthly cost to provide health savings accounts to its employees is $490.42. The Debtor ceased making 401(k) plan employer contributions as of this year.

47. As of the Petition Date, the Debtor owes arrears of $147,662.66 to its medical and dental insurance providers, $6,452.21 in connection with its employees' health savings accounts, and a total of $136,250.73 in employer contributions to its employees' 401(k) plans, which is subject to a setoff of $127,921.10 for a net amount due of $8,329.63. Although at this time, the Debtor does not have sufficient funds to pay these obligations in full, to the extent that funds become available to the Debtor in its cash collateral budget or through other means, the Debtor respectfully requests authorization to pay its prepetition Health and Welfare Benefits in the ordinary course of business.

48. The Debtor is required by New Jersey state law to maintain workers' compensation insurance ("Workers' Compensation Insurance"). The Debtor currently provides its Workers' Compensation Insurance through a policy with Travelers/The Charter Oak Fire Insurance Company. The monthly insurance premium for Workers' Compensation Insurance is $2,804.51 per month. At present, the Debtor owes one month of past-due premiums of $2,804.51 for its Workers' Compensation Insurance.

49. The Debtor requests that it be authorized to continue to pay for all monthly Workers' Compensation Insurance premiums as they become due, in the ordinary course of business.

50. The Debtor provides a qualified retirement plan under section 401(k) of the Internal Revenue Code ("401(k) Plan") for its employees. The Debtor deducts the appropriate amount of each employees' contributions and loan repayments to the 401(k) Plan from each participating employee's paycheck and transfers the withheld funds to the plan administrator.

51. The Debtor respectfully requests authorization to remit all 401(k) plan deductions to the 401(k) plan administrator and to continue performing its duties and obligations under the 401(k) Plan post petition in the ordinary course of business.

52. Lastly, the Debtor respectfully requests that all banks and financial institutions be authorized and directed to honor, receive, process and pay all checks and transfers drawn on the Debtor's bank account in connection with the Employee Obligations, irrespective of whether such items are presented before, on, or after the Petition Date.

### B. Bank Accounts

53. In connection with the operation of its business, the Debtor maintains the following bank accounts: an operating, payroll, lockbox and savings account at JP Morgan Chase Bank ("Chase Bank") and a checking and money market account at Provident Bank (the "Bank Accounts"). A listing of the Bank Accounts is attached hereto as Exhibit B.

54. The vast majority of the Debtor's cash management functions are effectuated through the Chase Bank operating, payroll and lockbox accounts. These accounts are utilized to manage the financial operations of the Debtor's business, including those that are automatically paid therefrom and those for which the Debtor manually generates payments (whether by check or other electronic transfer).

55. The Debtor utilizes the Chase Bank payroll account to remit funding for the payment of its payroll obligations.

### III. CONCLUSION

56. The First Day motions are designed to enable the Debtor to stabilize its business and continue its operations in the ordinary course. Accordingly, the Debtor respectfully requests that the Court enter same.

Dated: June 13, 2022                               */s/ Stephen Haupt*
                                                   Stephen Haupt

F0171076 - 1                                       10

# EXHIBIT A

## MANAGERS & MEMBERS

| Name & Address | Interest |
|---|---|
| Stephen Haupt, Managing Member | 60% |
| Evan Haupt | 10% |
| Evan Haupt Trust | 10% |
| Andrew Haupt Trust | 15% |
| Michael Haupt Trust | 2.5% |
| Allison Haupt Trust | 2.5% |

F0171076 - 1

## EXHIBIT B

## BANK ACCOUNTS

| Account Number (Last Four Digits) | Name of Depository | Type |
|---|---|---|
| 0766 | JP Morgan Chase Bank | Payroll Account |
| 0765 | JP Morgan Chase Bank | Operating Account |
| 2735 | JP Morgan Chase Bank | Lockbox Account |
| 3473 | JP Morgan Chase Bank | Savings Account |
| 2554 | Provident Bank | Checking Account |
| 5578 | Provident Bank | Money Market Account |

F0171076 - 1